FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

OCT 24 2024

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Dan Fruchter
Jacob E. Brooks
Assistant United States Attorneys
Gwendolyn Russell
Special Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>HARDWAY SOLUTIONS, LLC d/b/a<br>HARDWAY PERFORMANCE,<br><br>Defendant. | 2:24-CR-00057-TOR<br><br>PLEA AGREEMENT |

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington and Dan Fruchter and Jacob E. Brooks, Assistant United States Attorneys, and Gwendolyn Russell, Special Assistant United States Attorney, and Defendant HARDWAY SOLUTIONS, LLC d/b/a HARDWAY PERFORMANCE (hereinafter "Defendant") and Defendant's counsel, Stewart D. Cables and Andrew M. Wagley, agree to the following Plea Agreement:

1.    <u>Guilty Pleas and Maximum Statutory Penalties:</u>

Defendant agrees to plead guilty to Count 1 of the Indictment returned by the Grand Jury on April 17, 2024, charging Defendant with Conspiracy to Violate the Clean

Plea Agreement- 1 of 22

Air Act, in violation of 18 U.S.C. § 371, 42 U.S.C. § 7413(c)(2)(C), a Class D felony. Defendant understands that the following potential penalties apply:

    (a)   not more than a 5-year term of probation;

    (b)   a fine not to exceed $500,000;

    (c)   restitution; and

    (d)   a $400 special penalty assessment.

2.    <u>The Court is Not a Party to the Agreement:</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

    a.   sentencing is a matter solely within the discretion of the Court;

    b.   the Court is under no obligation to accept any recommendations made by the United States or Defendant;

    c.   the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

    d.   the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

    e.   the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

    f.   the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

3.    Defendant HARDWAY SOLUTIONS, LLC d/b/a HARDWAY PERFORMANCE Organization

Defendant HARDWAY SOLUTIONS, LLC d/b/a HARDWAY PERFORMANCE understands that this Plea Agreement is intended to bind HARDWAY SOLUTIONS, LLC d/b/a HARDWAY PERFORMANCE, and that if the Defendant changes names, reorganizes, merges, or otherwise ceases operations in its current form, the person or entity acquiring the assets or taking over the operation of Defendant's company shall take over the obligations of this Plea Agreement. The Defendant further agrees to provide the United States Attorney's Office for the Eastern District of Washington and the United States Probation Office for the Eastern District of Washington with immediate notice of any name change, business reorganization, sale or purchase of assets, divestiture of assets, or similar action impacting the operation of its business.

No name change, change in corporate or individual control, business reorganization, change in ownership, merger, change of legal status, sale or purchase of assets, or similar action shall alter the Defendant's responsibilities under this Plea Agreement. The Defendant shall not engage in any action to seek to avoid the obligations and conditions set forth in this Plea Agreement. This Plea Agreement, together with all of the obligations and terms thereof, shall inure to the benefit and shall bind assignees, subsidiaries, successors-in-interest, or transferees of the Defendant.

4.    Waiver of Constitutional Rights:

Defendant understands that by entering these pleas of guilty, Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

(a)    The right to a jury trial;

(b)    The right to see, hear, and question the witnesses;

(c)    The right to remain silent at trial;

(d)    The right to testify at trial; and

(e)    The right to compel witnesses to testify.

Plea Agreement - 3 of 22

While Defendant is waiving certain constitutional rights, Defendant understands he retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if Defendant cannot afford to hire an attorney. Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

5.    Elements of the Offense:

The parties agree that, in order to convict Defendant of Conspiracy to Violate the Clean Air Act, in violation of 18 U.S.C. § 371, 42 U.S.C. § 7413(c)(2)(C), as charged in Count 1, the United States would have to prove beyond a reasonable doubt the following elements:

- First, between on or about August 2, 2017 and on or about November 30, 2023, in the Eastern District of Washington and elsewhere, there was an agreement between at least two people to violate the Clean Air Act by tampering with or rendering inaccurate monitoring devices required by the Clean Air Act;

- Second, Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

- Third, one of the members of the conspiracy performed at least one overt act.

6.    Factual Basis and Statement of Facts:

The parties stipulate and agree that the United States could prove the following facts beyond a reasonable doubt at trial, and these facts constitute an adequate factual basis for Defendant's guilty pleas. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

Plea Agreement- 4 of 22

**Defendant and Co-Defendants**

At all relevant times, Ryan Hugh Milliken was a resident of Florida, and conducted business through his company, Defendant Hardway Solutions, LLC d/b/a Hardway Performance (Hardway Performance), which had its principal place of business in Mary Esther, Florida. At all relevant times between August 2017 and November 2023, Pavel Ivanovich Turlak (Turlak) was a resident of Spokane, Washington, and operated the trucking businesses PT Express LLC, Pauls Trans LLC, and Spokane Truck Service LLC, each of which had their principal place of business in Spokane, Washington. Defendant Hardway Performance, acting through Ryan Hugh Milliken and others, provided automotive services for customers, including providing custom engine tuning software for diesel engine trucks, including for Turlak and his companies.

**The Clean Air Act and Required Pollution Controls and Monitoring Devices**

The Clean Air Act directs the United States Environmental Protection Agency (EPA) to issue regulations limiting the amount of pollutants that motor vehicles, including diesel vehicles, can emit. To meet these emission standards, vehicle manufacturers design and install certain hardware devices as components of an emissions control system to manage and treat engine exhaust. This reduces the levels of pollutants such as nitrogen oxides, particulate matter, carbon monoxide, and non-methane hydrocarbons that are emitted into the air from tailpipe exhaust and keeps those emissions within regulatory limits. For diesel engines, such emissions control devices include diesel particulate filters ("DPF"), exhaust gas recirculation ("EGR") systems, diesel oxidation catalysts ("DOC"), and selective catalytic reduction ("SCR") systems. These hardware emissions control devices are critical components of a diesel vehicle's emissions control system and are essential to ensuring that the vehicle complies with the Clean Air Act's emissions standards.

EPA regulations also require manufacturers to install on-board diagnostic ("OBD") systems on vehicles and engines to ensure that emissions control systems

continue to operate properly. OBD systems must be capable of monitoring all emission-related engine systems or components, including the EGR system, the DOC, the DPF, and the SCR system.

The OBD system operates within a vehicle's engine control module ("ECM") (sometimes referred to as the engine or electronic control unit or "ECU"). The OBD is composed of software and sensors that monitor emissions-related engine systems and components for malfunctions that may increase emissions. If an emissions-related malfunction or problem occurs, the OBD system causes a malfunction indicator light ("MIL") to be illuminated on the vehicle's dashboard to alert the driver and a diagnostic trouble code ("DTC") to be stored in the OBD's memory. These functions facilitate the detection and diagnosis of a malfunction in the emissions control system. Removal, disconnection, or malfunction of certain powertrain components, including emissions control hardware, may cause the control system to limit the top speed of some vehicles to as low as five miles per hour (an effect commonly referred to as "limp mode" or "power reduced mode"), providing an incentive for the vehicle's operator to seek repairs and to prevent damage to other components.

OBD systems are monitoring devices or methods required to be maintained or followed under the Clean Air Act to ensure that both the emissions-monitoring computer software and the hardware emissions control devices of vehicles are functioning properly. Persons seeking to evade the Clean Air Act's pollution controls for heavy-duty diesel vehicles have developed methods of modifying or removing emissions control systems and rendering the OBDs inaccurate. These modifications may be undertaken to avoid repair and maintenance costs associated with emissions controls and to improve the horsepower, torque, fuel efficiency, or other characteristics of diesel engines. These unlawful modifications result in a dramatic increase in multiple pollutants being emitted by each vehicle.

One method of disabling a manufacturer-installed emissions control system is to remove the portion of the vehicle's exhaust system that contains some of the emissions

1  control equipment, such as the DOC and SCR catalyst, and replace it with a section of
2  hollow exhaust tubing sometimes referred to as a "straight pipe." These "straight pipes"
3  funnel the vehicle's exhaust through the tailpipe, with no reduction in pollutants.
4  Alternatively, the DPF, DOC, and SCR can be hollowed out by removing the
5  operational internal contents (e.g., catalyst substrate), and then reconnected to the
6  exhaust pipe. This gives the appearance that the components are still intact but
7  eliminates their effective function. The EGR can be disabled through the installation
8  of "block plates" that cover the EGR valve and prevent the recirculation of exhaust.
9  Additionally, certain functions of emissions control components can be electronically
10 disabled.

11      To prevent an OBD system from detecting that the emissions controls have been
12 modified or removed, the ECM is reprogrammed to disable at least some of the OBD
13 monitoring functions and to modify other engine functions related to the operation of
14 emissions controls (e.g., turning off diesel exhaust fluid ("DEF") injection, turning off
15 DPF regenerations, and remapping other parameters to account for the removed or
16 disabled emissions controls). If an ECM is not reprogrammed after modification or
17 removal of emissions control equipment, a properly functioning OBD will detect the
18 malfunction or removal of the emissions control equipment, trigger a MIL alert, store a
19 DTC and, in certain instances, cause the vehicle to go into limp mode. For example,
20 DEF is injected into the SCR system to treat nitrogen oxides in the exhaust as the
21 exhaust flows through the SCR catalyst. DEF is used up as the engine is operated, and
22 if it is not refilled, the OBD system will notify the driver that DEF level is low. If not
23 remedied, the OBD will cause the vehicle to go into limp mode.

24      The act of tampering with, disabling, or removing emissions-related software or
25 hardware is sometimes referred to as "deletion" or "deleting." Reprogramming the
26 ECM, including the OBD system, as part of the emissions control deletion can be
27 referred to as "tuning" or "reflashing" the vehicle. One method used to prevent the OBD
28 from detecting a malfunction in the emission control system involves connecting a

laptop computer to the vehicle's OBD through the OBD port and "flashing" (reprogramming) the OBD. Another common method involves installing a tune file on the OBD through a tuning device (sometimes referred to as a "tuner") that is connected to the OBD through the OBD port.

Reprogramming an OBD to prevent it from detecting the removal or disabling of emission control systems components constitutes tampering with and rendering inaccurate a monitoring device required under the Clean Air Act.

### Defendants' Criminal Conspiracy to Violate the Clean Air Act

Beginning no later than August 2, 2017 and continuing until at least November 30, 2023, Defendant Hardway Performance, acting through Ryan Hugh Milliken and others, created and supplied delete tune files to Turlak designed to illegally tamper with OBDs, which Turlak then loaded onto his own trucks and the trucks of co-conspirators who paid Turlak to install delete tune files onto their vehicles in order to illegally tamper with the OBD systems of the vehicles in violation of the Clean Air Act. Turlak paid Defendant for these delete tune files, which Defendant created for specific vehicles and vehicle identification number (VINs) at Turlak's request.

On January 10, 2020, the Environmental Appeals Board entered an administrative consent agreement between the United States Environmental Protection Agency and Ryan Hugh Milliken and his company, Defendant Hardway Performance. As part of the consent agreement, Ryan Hugh Milliken and Defendant Hardway Performance stipulated and admitted to manufacture and selling "tunes" designed to modify the programming on ECMs of diesel trucks. As a further part of the consent agreement, Ryan Hugh Milliken and Defendant Hardway Performance did not explicitly admit to having violated the law; however, both agreed to pay a civil penalty of $45,000, which reflected a reduced penalty because Ryan Hugh Milliken and Defendant Hardway Performance "demonstrate[d] their inability to pay a higher civil penalty." Finally, Ryan Hugh Milliken, on his own behalf and on behalf of Defendant Hardway Performance, certified and promised as part of the consent agreement that

Plea Agreement- 8 of 22

1 "they will not manufacture, sell, offer for sale, or install any Defeat Device that defeats,

2 bypasses, or otherwise renders inoperative any emissions-related device or element of

3 design on a motor vehicle or motor vehicle engine subject to regulation under Title II

4 of the [Clean Air Act]…"

5   Both before and in violation of this consent agreement, Defendant Hardway

6 Performance, acting through Ryan Hugh Milliken and others, continued to manufacture

7 and sell defeat devices, to wit, software designed to defeat, bypass and tamper with

8 OBDs, and to render them inaccurate and inoperative, to Turlak and others. Ryan Hugh

9 Milliken and Defendant Hardway Performance provided Turlak dozens of delete tunes

10 between August 2017 and November 2023. On average, Ryan Hugh Milliken and

11 Defendant Hardway Performance charged Turlak approximately $500 for each tune and

12 related software necessary to install the tune.

13   For example, on or about February 13, 2019, Turlak emailed Defendant

14 Hardway Performance's general email account requesting to purchase "another tune

15 and vin license. Its a (63) 2018 Ram 3500 Aisin. regular pickup. Vin

16 #3C63R3GL5JG330936. Need it to be a stock deleted tune." On or about that same

17 day, an employee of Hardway Performance (Hardway Employee 1) emailed four tune

18 files created by Ryan Hugh Milliken to Turlak, including a file named

19 "STOCKDELETE_PUAISIN_V33.1_75MPH_0936.bbx." Turlak used the delete

20 tune file supplied by Ryan Hugh Milliken to disable emissions system hardware and

21 tamper with and render inaccurate the OBD system on the 2018 RAM 3500, VIN #

22 3C63R3GL5JG330936, registered to Turlak's spouse.

23   On or about February 4, 2020, Turlak emailed a second employee of Hardway

24 Performance (Hardway Employee 2), "I need to buy a stock delete tune please. For a

25 2016 Ram 3500. Aisin Trans. Regular pickup. Vin#3C63RGL1GG198377." That day,

26 Hardway Employee 2 replied, "I will forward all this over to Ryan and get this added

27 to your tab. I run cards on Mondays for tuning orders. Thanks."

28

Additionally, on or about March 17, 2020, only two months after Defendant Hardway Performance and Ryan Hugh Milliken entered into the consent agreement with EPA in which they promised to not engage in further violations of the Clean Air Act through tampering with required emissions controls and monitoring systems, Turlak emailed Hardway Employee 2 to place a tune order for a 2014 RAM with VIN # 3C6UR5PL9EG137565. The 2014 RAM with VIN # 3C6UR5PL9EG137565 was registered to a "customer" of Turlak who paid Turlak a fee in return for installing an illegal delete tune on the 2014 RAM vehicle in order to tamper with and render inaccurate the required monitoring devices. On or about March 19, 2020, Ryan Hugh Milliken emailed Turlak supplying the requested delete tune file, "3C6UR5PL9EG137565_131867_QUICKSETUP.bbx." On or about the following day, Turlak emailed Ryan Hugh Milliken to request alterations to the tune to suit his customer's request: "Hi Ryan, last tune I received from you is showing 0 on DEF gauge. My customer was told it will show full because your tunes usually show full def after a tune but this one isn't. Its important to him for it to show 100 on the DEF. I know it doesn't effect his performance. But please help me correct this." As discussed above, a DEF gauge measures the presence and quantity of diesel exhaust fluid used to control emissions, and a zero DEF reading suggests that a truck's emission control system and/or OBD is not functioning properly. On or about the same date, Ryan Hugh Milliken responded via email to Turlak: "Likely not worth the engineering time but I'll look into it. What is the vin and or what model year and trans type is your customers truck?" Turlak responded by email, providing the requested information. Thereafter, Ryan Hugh Milliken and Turlak continued to correspond regarding issues with the tune. On or about May 26, 2020, Turlak emailed Ryan Hugh Milliken: "[T]hank you for getting back to me with a updated tune but I tried the updated tune. I kept getting the code 0536. But oddly enough that issue got resolved by reformatting the device. But once downloaded onto the truck. Def gauge still shows 0. I double checked to make

sure I installed the updated tune and everything." On or about the following day, May 27, 2020, Ryan Hugh Milliken replied via email:

> Sir, respectfully, if the DEF gauge doesn't read full on that file, I don't care to fix it. Our business direction has changed since our dealings with that certain government agency and polishing products **I'm not supposed to even be selling** is nowhere near the top of my priority list. I don't have a better way to put it other than what I have to offer is what I have to offer, purposely there will be no further revisions, no attempts at making anything any better than what it is and no further R&D will go into street truck delete tuning. **Think of it like being a drug dealer and trying to make your street product better so you can sell more of it even though you just got out of prison for distribution…. Its exactly like that.** I understand you have done a lot of business with us and I appreciate that, I also understand if you choose to take your business elsewhere to those who are continuing to press on with product evolution, that's the natural evolution of what's happening here and completely acceptable. In the mean time as long as the truck is functional and what I've sold you is functioning as intended than my obligations are satisfied. Thank you for your understanding. (Emphasis added).

Ryan Hugh Milliken copied Hardway Employee 2 and a third employee of Hardway Performance (Hardway Employee 3) on this email reply to Turlak. On or about the same date, May 27, 2020, Turlak responded to Ryan Hugh Milliken via email: "I completely agree with you about the def showing 0. And If it was my truck I could care less. BUT this is a customer. For him its very important. He specifically asked to make his truck look and sound stock. He asked about his def gauge prior to dropping off his truck and i told him it would be showing 100. When everything was achieved besides the def gauge. He wasn't happy. So all I'tm trying to do is hold up my word that his def gauge will be showing 100." Between March 17, 2020 and May 27, 2020, Turlak used the delete tune file supplied by Ryan Hugh Milliken to tamper with the OBD system on the 2014 RAM, VIN # 3C6UR5PL9EG137565, belonging to the customer who paid Turlak a fee in return for Turlak deleting and tuning the required monitoring devices using the delete tune file created and supplied by Ryan Hugh Milliken.

During the same period, on or about March 20, 2020, Turlak emailed Ryan Hugh Milliken to ask about tuning for newer 2019 vehicles, writing, "Ryan I was wondering if the 5th gen tunes are rolling well? If so how are the HO engines with lower compression working out as far as tuning. I've tried 2 companies seems like their tunes are fairly raw. Just getting a little tired of raw tunes. [Hardway Employee 2] said you started tuning the 19s so hoping you got them figured out. What are you seeing for mpg improvements and power gains? Also hows the aisin reacting to your tunes. Both other companies made the trans do weird stuff. Thank you for your time." On or about March 23, 2020, Ryan Hugh Milliken replied: "The 2019's are a lot like the 13-18 trucks as far as tuning goes so, if you like the way those run from us, that's how the new ones run too. Until EFI offers it thru their software, we don't have any CSP or SOTF for them, not that I use that on any of my trucks anyway but for some reason its important to some people." The following day, Turlak replied to the email chain, "What can you do price wise for a stock deleted tune once I test it out, I would like to test the csp files once they are available. If I like the stock deleted file I'll start using them in my other 19s. But the test will be for my personal truck. 19 ram 3500 aisin trans. Regular pickup. Thank you."

On or about July 22, 2020, Turlak emailed Ryan Hugh Milliken to request a "stock deleted" tune for a 2015 RAM 3500 with VIN 3C63R3ML8FG512237. On or about July 30, 2020, Ryan Hugh Milliken emailed Turlak the requested delete tune file, "STOCKD_PUAISIN_V33.1_3C63R3ML8FG512237.ctz." Ryan Hugh Milliken cc'd Hardway Employee 2 and a fourth employee of Hardway Performance (Hardway Employee 4) on the email providing the delete tune file. That day, Turlak emailed Ryan Hugh Milliken to report issues with the tune file, writing: "Thank you but I get 0532. I double checked that I'm using the right controller. Restarted both devices, still no luck. I remember having this issue couple months ago and [Hardway Employee 2] formating it to bbx some how fixed it. Idk how but thats how I got around it that time. Could you please help. Thank you kindly." On or about July 31, 2020, Turlak emailed Hardway Employee 2, writing " THANK YOU FOR HELPING OUT. HERE IS THE TUNE

Plea Agreement- 12 of 22

THATS THROWING THE CODE 0532." Turlak attached the tune file, "STOCKD_PUAISIN_V33.1_3C63R3ML8FG512237.ctz." That day, Hardway Employee 2 emailed Turlak a new delete tune file in the ".bbx" format, "STOCKD_PUAISIN_V33.1_3C63R3ML8FG512237.bbx." Hardway Employee 2 wrote "Not sure if this will fix your issue... But its worth a shot I suppose. If this doesn't work, email Ryan back in the same chain as you got the tune from and he can look into it." Later that day, Turlak replied to Hardway Employee 2 by email, "Bbx tune file did the trick. Thank you kindly." Later that day, Turlak again emailed Hardway Employee 2 about the tune file, writing: "[I]t did the trick, thank you. One thing I'm fighting with it code p2495. I thought with the tune all egr related codes should be shut off. Any ideas?"

Additionally, on or about August 14, 2020, Turlak emailed Ryan Hugh Milliken to request a delete tune: "I would like to order a stock delete tune for a 2019 Ram 3500 regular truck. Aisin Trans. Could you please get me a vin license as well. Vin #3C63R3GL5KG682884. Esn# 59274017." On or about August 17, 2020, Turlak placed an order with Hardway Performance for a "stock delete file" for a "regular 2019 Ram with aisin. Stock truck with 4 inch straight pipe" and VIN # 3C63R3GL5KG682884. On or about August 21, 2020, Ryan Hugh Milliken emailed Turlak the requested delete tune file, "19PUAisin_QUICKSETUP_3C63R3GL5KG682884.bbx". On or about that same date, Turlak used the delete tune file supplied by Ryan Hugh Milliken to disable emissions system hardware and tamper with and render inaccurate the OBD system on the 2019 RAM 3500, VIN # 3C63R3GL5KG682884, registered to Turlak's spouse. On or about that same date, Turlak responded to Ryan Hugh Milliken's email "Got the tune installed. Engine pulls good runs good. Can't set cruise control. I'll attach a picture. Nothing wrong with the truck. Cruise control worked great right before the tune. I didnt [sic] even do a physical delete on the truck. Just wanted to see how the tune will work on it. No cruise control. Nothing was unpluged yet.".

Moreover, on November 27, 2020, Turlak emailed Ryan Hugh Milliken requesting "three stock delete tunes limited to 70 mph." Turlak provided the model and vehicle identification number ("VIN") for three vehicles, including a 2017 Ram 3500, VIN# 3C63RRJL0HG719053. Turlak directed Ryan Hugh Milliken to "Go ahead and charge my credit card you have on file." On December 1, 2020, Ryan Hugh Milliken emailed Turlak as follows: "See attached max vin slot code as well as 3 stockD files limited at 70mph for the vin's you listed." Attached to the email were three files, including a file named "3C63RRJL0HG719053_STOCKD_PUAISIN_V33.1_70MPH.ctz", intended to be used to tamper with the OBD systems of the three vehicles. Ryan Hugh Milliken cc'd Hardway Employee 2 on this email providing the tune files to Turlak. Turlak used the tune file supplied by Ryan Hugh Milliken to disable emissions system hardware and tamper with and render inaccurate the OBD system on the 2017 RAM, VIN # 3C63RRJL0HG719053, registered to Turlak.

Additionally, on or about March 25, 2021, Turlak emailed Ryan Hugh Milliken stating, "I would like to order a stock D[elete tune] for a 2019 Ram 3500. Regular pickup. Aisin trans. Stock D. Limit the speed to 70mph please. Vin# 3C63R3GL9KG542515." On or about March 26, 2021, Ryan Hugh Milliken responded via email: "I'll fill the PO for that 2019 but I dont want to do anymore, its a platform I have no interest in supporting in the same manner as we do the older trucks because, well you know why." Ryan Hugh Milliken cc'd Hardway Employee 2 on this response email. On or about March 31, 2021, Ryan Hugh Milliken emailed Turlak: "See attached file for 19 PU Aisin, please don't consider us for any more files on the 19+ platform. I might work on some stuff in the future but as of right now I dont plan on supporting the platform like we do the older ones, this attached file should get you by…." Ryan Hugh Milliken attached a file to the email named "1920PUAISIN_SYM_CSP_V8_3C63R3GL9KG542515.ctz," which was a delete tune file that Ryan Hugh Milliken created and supplied to Turlak for the purpose of

1  tampering with and rendering inaccurate the OBD system on the 2019 Ram 3500 with
2  VIN #3C63R3GL9KG542515, registered to Turlak.

3       Additionally, on or about October 31, 2022, Turlak emailed Ryan Hugh Milliken
4  and requested a tune "Stockd[elete]" tune for a 2015 Ram 2500 with VIN#
5  3C6UR5NLXFG611530. That day, Ryan Hugh Milliken emailed Turlak the requested
6  delete tune tile, "PU68_170PSI_V33.1_3C6UR5NLXFG611530.ctz," which was a
7  delete tune file that Ryan Hugh Milliken created and supplied to Turlak for the purpose
8  of tampering with and rendering inaccurate the OBD system on the vehicle. Ryan Hugh
9  Milliken cc'd a fifth Hardway Performance employee (Hardway Employee 5), on the
10  email providing the delete tune file.

11       Additionally, on or about April 12, 2023, Turlak emailed Ryan Hugh Milliken to
12  request a tune file: "I got a 2020 Ram 3500. Aisin trans. regular pickup. Needs a s[tock]
13  d[elete]. Vin 3C63R3GL5LG272328." On or about April 13, 2023, Ryan Hugh
14  Milliken      responded      by      email      to      Turlak,      attaching      the      file
15  "SD_20Aisin_V10_3C63R3GL5LG272328.ctz."     This file was a delete tune file
16  created by Ryan Hugh Milliken for the purpose of disabling and rendering inaccurate
17  the OBD and required monitoring device for the vehicle specified by Turlak. Turlak
18  used the delete tune file supplied by Ryan Hugh Milliken to disable emissions system
19  hardware and to tamper with and render inaccurate the OBD system on the 2020 RAM
20  3500, VIN #3C63R3GL5LG272328, registered to Turlak's company Pauls Trans, LLC.

21       On November 30, 2023, agents with EPA's Criminal Investigation Division
22  executed a search warrant at Turlak's business locations at 4207 E Rowan Ave.,
23  Spokane, Washington 99217 and 4219 E Rowan Ave., Spokane, Washington 99217, in
24  the Eastern District of Washington. EPA's National Enforcement Investigations Center
25  ("EPA-NEIC") provided field technical inspection of vehicles located on the properties
26  with remote assistance from EPA contractor Eastern Research Group, Inc. EPA-NEIC
27  performed physical inspections and digital scans of the OBD systems on eight vehicles
28  located on the properties. EPA-NEIC observed disabling of the emissions control

Plea Agreement- 15 of 22

hardware components and illegal tampering with the OBD systems required by the Clean Air Act on seven of the eight vehicles. Relevant here, EPA-NEIC observed this conduct on the following five vehicles, each using a delete tune file created and supplied by Defendant Hardway Performance, acting through Ryan Hugh Milliken and others, to Turlak:

| NEIC Veh. No. | VIN | Vehicle Manufacturer, Year, Make | Digital Evidence of OBD tampering? | Visual Inspection |
|---|---|---|---|---|
| 1 | 3C63RRJL0HG719053 | 2017 Fiat Chrysler Automobiles US LLC (FCA) RAM 3500 | Yes | Discreet EGR block plates observed |
| 3 | 3C63R3GL5JG330936 | 2018 FCA RAM 3500 | Yes | Discreet EGR block plates observed |
| 4 | 3C63R3GL9KG542515 | 2019 FCA RAM 3500 | Yes | Discreet EGR block plates observed |
| 5 | 3C63R3GL5LG272328 | 2020 FCA RAM 3500 | Yes | Discreet EGR block plates observed |
| 8 | 3C63R3GL5KG682884 | 2019 FCA RAM 3500 | Yes | Discreet EGR block plates observed |

Defendant admits that between August 2, 2017 and November 30, 2023, in the Eastern District of Washington and elsewhere, Defendant Hardway Performance and Ryan Hugh Milliken, together with Turlak, Turlak's companies, Turlak's customers, and others, conspired and agreed to violate the Clean Air Act by tampering with and rendering inoperable required monitoring devices and methods, and that, in furtherance of that conspiracy, Defendant Hardway Performance, Ryan Hugh Milliken, Turlak, and their conspirators committed overt acts, including the above.

    7.    The United States Agrees:

        (a)    To Dismiss Counts:

At the time of sentencing, the United States agrees to move to dismiss as to Defendant Counts 2 through 4 and Count 6 of the Indictment, which charge Tampering with Clean Air Act Monitoring Device, in violation of 42 U.S.C. § 7413(c)(2)(C), 18 U.S.C. § 2.

(b)  Not to File Additional Charges:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in the Indictment, unless Defendant breaches this Plea Agreement any time before sentencing.

8.  Statutory Authority:

Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "Sentencing Guidelines" or "USSG") are applicable to this case and that the Court will determine Defendant's applicable sentencing guideline range at the time of sentencing. Defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

Defendant understands and acknowledges that the Sentencing Guidelines, including Chapter Eight that provides guidance for the sentencing of corporate defendants, will be considered by the court except that pursuant to USSG §§ 8C2.1 and 8C2.10, the Guidelines that pertain to the sentencing of organizations do not determine the fine range in cases involving environmental crimes. Instead, the fine is to be determined under 18 U.S.C. §§ 3553 and 3572. All other sections of Chapter Eight of the Sentencing Guidelines that are applicable to corporate defendants are applicable to this case, including provisions for probation.

9.  Criminal Fine:

The parties are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdrawal from this guilty plea, or appeal Defendant's conviction, sentence, or fine.

10.    <u>Restitution and Forfeiture:</u>

The parties agree restitution and forfeiture are not applicable here.

11.    <u>Probation:</u>

The parties agree to recommend that the Court impose a 5-year term of probation. *See* 18 U.S.C. § 3561(c)(l) and USSG §§ 8D1.1 and 8D1.2.Additionally, the parties agree that the terms of probation or supervised release shall include the following special conditions, in addition to the Court's standard conditions:

     A.    No Further Violations: The Defendant will commit no further violations of the Clean Air Act, or other federal, state, or local law, and he and his business shall conduct all operations in accordance with EPA regulations and with other federal, state, and local environmental regulations.

     B.    Environmental Compliance: Defendant Hardway Performance shall follow the compliance program attached to this Plea Offer.

The parties are free to advocate for any additional special conditions they believe are appropriate.

12.    <u>Mandatory Special Penalty Assessment:</u>

Defendant agrees to pay the $400 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington. *See* 18 U.S.C. § 3013.

13.    <u>Additional Violations of Law Can Void Plea Agreement:</u>

The parties agree that the United States may at its option and upon written notice to Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, before sentencing, Defendant is charged or convicted of any criminal offense whatsoever.

14.    <u>Waiver of Appeal</u>

In return for the concessions that the United States has made in this Plea Agreement, Defendant agrees to waive Defendant's right to appeal Defendant's conviction and sentence.

Defendant expressly waives Defendant's right to appeal any fine, term of probation, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

15.    Withdrawal or Vacatur of Defendant's Plea

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a.    The United States' obligations under this Plea Agreement shall become null and void;

    b.    the United States may prosecute Defendant on all available charges;

    c.    The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

    d.    the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

16. Waiver of Attorney Fees and Costs:

Defendant agrees to waive all rights Defendant may have under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including, without limitation, any charges to be dismissed pursuant to this Plea Agreement or any charges previously dismissed or not brought as a result of this Plea Agreement).

17. Owner Approval:

The Defendant represents, and will state to the Court on the record, that its owners, directors, and/or duly authorized corporate officers authorize Defendant to plead guilty to the Indictment in this case, and to enter into and comply with all the provisions of this Plea Agreement.

18. Integration Clause:

The parties acknowledge that this document constitutes the entire Plea Agreement between the parties, and no other promises, agreements, or conditions exist between the parties concerning this case's resolution. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities. The parties agree that this agreement cannot be modified except in writing that is signed by the United States and Defendant.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Approval and Signature

Agreed and submitted on behalf of the United States Attorney's Office for the

Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

Dan Fruchter
Assistant United States Attorney

10/29/24
Date

Jacob E. Brooks
Assistant United States Attorney

10/24/24
Date

Gwendolyn Russell
Special Assistant United States Attorney

10/24/2024
Date

Plea Agreement- 21 of 22

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreements with my attorney.  I understand and voluntarily enter into the Plea Agreement.  Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case.  No other promise or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement.  I am agreeing to plead guilty because I am guilty.

_____          10/21/2024
Ryan Hugh Milliken                        Date
Corporate Representative for
Hardway Solutions, LLC

I have read the Plea Agreement and have discussed the contents of the agreement with my client.  The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties.  I concur in my client's decision to plead guilty as set forth in the Plea Agreement.  There is no legal reason why the Court should not accept Defendant's plea of guilty.

_____          10-21-2024
Stewart D. Cables                         Date
Attorney for Defendant

_____          10/21/24
Andrew M. Wagley                          Date
Attorney for Defendant

Plea Agreement- 22 of 22

ATTACHMENT A

**COMPLIANCE PROGRAM**

Hardway Solutions, LLC d/b/a Hardway Performance, and its subsidiaries or affiliates ("the defendant"), through its authorized representative, agrees to the following monitoring and compliance measures during the term of Probation:

Definitions:

   a. "Vehicle" means any (1) "motor vehicle" as defined under the Clean Air Act, 42 U.S.C. § 7550(2), which includes any self-propelled truck, semi-truck, car, van, camper, bus, or any other vehicle used to transport persons or property on streets or highways; and (2) "nonroad vehicle" as defined under the Clean Air Act, 42 U.S.C. § 7550(11), which includes any engine-powered vehicle such as construction, agricultural, or recreational equipment that is not designed for use on streets or highways.

   b. "Vehicle tampering" means any steps taken to remove, render inoperable, override, modify, or alter any component of any vehicle's emissions control system, including but not limited to the selective catalytic reduction (SCR), exhaust gas recirculation (EGR), periodic trap oxidizer (PTOX), diesel particulate filter (DPF), diesel oxidation catalyst (DOC), or engine control module (ECM), or the onboard diagnostic (OBD) system.

   c. "Defeat device" includes, but is not limited to, an "EGR delete," "DPF delete," "delete kit," "upgrade kit," "conversion kit," "tuner," "tune," "programmer," "block plate," "straight pipe," or any other device designed to override, modify, alter, or allow the removal of any component of a vehicle's emissions control system.

   d. "Tampered vehicle" means any vehicle that has been modified pursuant to "vehicle tampering."

Terms:

   1. The defendant agrees not to manufacture or sell, or offer to sell, or install any defeat device.

   2. The defendant agrees not to engage in, or aid and abet, or conspire to, or cause others to engage in, vehicle tampering.

   3. The defendant agrees to immediately cease operating any tampered vehicles it owns or operates (or that a subsidiary or affiliate owns or operates). The defendant will not sell or otherwise transfer any such vehicle intact or in a condition that allows the vehicle to be driven, unless it is restored. Within six months of Court approval of the Plea Agreement, the defendant agrees to

1

restore, scrap or recycle any tampered vehicle it owns or operates. If any other vehicles are later identified as being tampered vehicles that are owned or operated by the defendant or its subsidiaries or affiliates, the defendant agrees to immediately cease operating and to restore, scrap or recycle those vehicles.

    a. For any tampered vehicles that are restored to stock, the defendant shall obtain and present a certification (attached) from a mechanic or dealership licensed by the vehicle's Original Equipment Manufacturer (OEM) that the vehicle has been restored to its certified configuration.

    b. For any tampered vehicles that are not restored to stock, the "long block" may be removed and sold for scrap, parts, or recycling, so long as the intake and exhaust manifolds are removed. The manifolds must be sold for scrap or otherwise disposed of. Any other emission control components that have been tampered with must be sold for scrap or otherwise disposed of. The remainder of the vehicle can be sold for scrap, parts, or recycling.

4. For any tampered vehicle, the defendant agrees not to work on, repair, or service (1) the OBD system or (2) any hardware relating to the emissions control system, including the SCR, EGR, PTOX, DPF, and DOC, except for the purpose of restoring the emissions control system on the tampered vehicle to its certified configuration, that is, restoring it to stock.

5. The defendant agrees to permit unrestricted entry to federal, state, and local officials to inspect premises, including hard copy and electronic documents, at any time and without advance notice, for violations of the Clean Air Act, 42 U.S.C. §§ 7413(c)(2) and 7522(c)(3).

6. The defendant agrees to submit to the U.S. Attorney's Office an annual report detailing the company's compliance measures and including a certification signed by a responsible corporate officer confirming, if true, that the company has not knowingly engaged in any violations of the Clean Air Act, 42 U.S.C. §§ 7413(c)(2) and 7522(c)(3). The first certification shall be submitted one year from the date on which the Information is filed and shall be filed annually on that date until the Term of the Agreement is concluded.